IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LARA BARNHILL, on behalf of herself and all other similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:15-cv-892 |
| FIRSTPOINT, INC. d/b/a FIRSTPOINT INFORMATION RESOURCES and FIRSTPOINT COLLECTION RESOURCES, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Loretta C. Biggs, District Judge.

Plaintiff, Lara Barnhill, initiated this putative class action against Defendants, FirstPoint, Inc. and FirstPoint Collection Resources, Inc., alleging violations of federal and state debt collection laws and seeking injunctive relief. Before the Court is Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 33.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

Plaintiff alleges in her Second Amended Complaint ("Complaint") that she had a debt that was discharged on October 8, 2014 through a Chapter 7 Bankruptcy under 11 U.S.C. § 727. (ECF No. 26 ¶ 24.) Following the discharge, Plaintiff alleges that Defendants contacted her on March 23, 2015 in an effort to collect the discharged debt. (*Id.* ¶ 28.) On October 21, 2015, Plaintiff filed this action, alleging three claims against Defendants: (1) violation of the Fair Debt Collection Practices Act; (2) violation of the North Carolina Collection Agency Act;

and (3) temporary and permanent injunctive relief.  (*Id.* at 12–13.)  Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.  (ECF No. 33.)

The Court begins with an overview of the Bankruptcy Code, the Federal Debt Collection Practices Act, and the North Carolina Collection Agency Act.

I.  **OVERVIEW OF THE RELEVANT STATUTES**

   **A.  The Bankruptcy Code**

The principal purpose of the Bankruptcy Code is to grant debtors a "fresh start."  *In re Dubois*, 834 F.3d 522, 526 (4th Cir. 2016) (quoting *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007)), *petition for cert. filed*, 85 U.S.L.W. 3277 (U.S. Nov. 23, 2016) (No. 16-707).  The Code "provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights."  *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120 (2d Cir. 2001).  The Bankruptcy Code's automatic stay provision is one of the fundamental debtor protections in the Code.  *See Winters by and through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996).  It provides that the filing of a bankruptcy petition automatically stays all collection efforts during the pendency of the bankruptcy.  *See id.*; *see also* 11 U.S.C. § 362.  The permanent bankruptcy discharge in 11 U.S.C. § 524(a)(2) is another key provision of the Bankruptcy Code, which the court grants at the end of bankruptcy proceedings.  *See In re Cherry*, 247 B.R. 176, 182 (Bankr. E.D. Va. 2000).  It "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  A discharge under § 524(a)(2) gives the debtor

2

her "fresh start." *In re Cherry*, 247 B.R. at 182. Bankruptcy courts are authorized to hold creditors in civil contempt for attempting to collect on a discharged debt in violation of § 524(a)(2). *See In re Fina*, 550 F. App'x 150, 154 (4th Cir. 2014) (unpublished per curiam decision); *In re Tucker*, 526 B.R. 616, 621 (Bankr. W.D. Va. 2015).

### B. The Fair Debt Collections Practices Act ("FDCPA")

"Congress enacted the FDCPA to eliminate abusive debt collection practices . . . ." *In re Dubois*, 834 F.3d at 526 (citing 15 U.S.C. § 1692(a), (e)). The statute regulates the conduct of "debt collectors," defined to include "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). In connection with collection of a debt, the FDCPA prohibits, among other things, the use of "any false, deceptive, or misleading representation." § 1692e. The FDCPA provides a civil cause of action against debt collectors who fail to comply with its requirement, making them strictly liable for actual damages, statutory damages of up to $1,000, and attorneys' fees and costs. § 1692k(a); *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 381 (D. Md. 2012).

### C. The North Carolina Collection Agency Act ("NCCAA")

Similar to the FDCPA, the NCCAA regulates the activities of "collection agencies," defined to include an agency that "engages, directly or indirectly, in debt collection from a consumer." N.C. Gen. Stat. § 58-70-90. The statute prohibits collection agencies from engaging in harassing or oppressive conduct and from collecting or attempting to collect a debt by fraudulent, deceptive, or misleading representations. §§ 58-70-100, 58-70-110. For

3

each violation of these provisions, a collection agency faces civil liability of at least $500 and no greater than $4,000. § 58-70-130(b).

## II. DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1)

Defendants argue that Plaintiff's FDCPA and NCCAA claims should be dismissed for lack of subject matter jurisdiction. Specifically, they contend that (1) the bankruptcy code preempts Plaintiff's claims under the FDCPA and the NCCAA, and (2) Plaintiff lacks standing. (ECF No. 34 at 5, 9.)

A motion for lack of subject matter jurisdiction under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). This Court's subject matter jurisdiction is limited in that the Court "possess[es] only the jurisdiction authorized . . . by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). The burden of proving subject matter jurisdiction rests with the plaintiff, the party asserting that jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the plaintiff fails to prove subject matter jurisdiction, the Court must dismiss the action. *Vuyyuru*, 555 F.3d at 347.

### A. Whether the Bankruptcy Code Preempts Plaintiff's Claims

*1. FDCPA*

The Court rejects Defendants' argument that Plaintiff's FDCPA claim is preempted by the Bankruptcy Code because "[o]ne federal statute does not preempt another." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). "When two federal statutes address the same

4

subject in different ways, the right question is whether one implicitly repeals the other . . . ." *Id.* "Repeal by implication is disfavored." *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 89 (2d Cir. 2016). "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)). In this case, it is undisputed that the Bankruptcy Code, which is the later enacted statute, does not contain any express or affirmative congressional intention of repealing the FDCPA. *See Kline v. Mortg. Elec. Sec. Sys.*, 659 F. Supp. 2d 940, 950 (S.D. Ohio 2009). Rather, the issue is whether the two statutes are irreconcilable.

While the Fourth Circuit has not addressed this issue, the Second Circuit on facts similar to this case recently considered whether the Bankruptcy Code precluded FDCPA claims based on attempts to collect on a debt discharged in bankruptcy. In *Garfield*, the Second Circuit held that the Bankruptcy Code does not preclude FDCPA claims based on attempts to collect on post-discharge debts. 811 F.3d at 91, 93. In reaching its holding, the court drew a distinction between FDCPA claims brought during a bankruptcy and those brought following a bankruptcy discharge. *Id.* at 90. Unlike in the pre-discharge context, where the debtor is still under the protection of the bankruptcy court, after discharge, the court stated the plaintiff-debtor lacked the protection of the bankruptcy court. *See id.* at 91. In particular, the court pointed out that the discharge injunction provision of the Bankruptcy Code does not create a cause of action for its violation, whereas the automatic stay provision during bankruptcy provides such a remedy for violations. *Id.* at 91–92. After concluding that the Bankruptcy Code does not impliedly repeal all FDCPA provisions to remedy conduct that

5

violates the discharge injunction, the Second Circuit then considered whether specific provisions of the Bankruptcy Code might impliedly repeal certain provisions of the FDCPA on post-discharge claims. *Id.* at 92. As in this case, the plaintiff asserted claims under subsections 1692e, e(2), and e(10). *Id.* at 89, 93. In concluding that the Bankruptcy Code's discharge injunction did not conflict with these FDCPA provisions, the court stated that the defendant "can avoid violating both the cited provisions and the Bankruptcy Code simply by not attempting to collect the discharged debt. And once [the defendant] tries to collect the discharged debt, it risks violation of both the cited provisions and the Bankruptcy Code." *Id.*; *see Randolph*, 368 F.3d at 730 (concluding that "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously").

Numerous district courts, like the Second Circuit in *Garfield*, have concluded that the Bankruptcy Code does not preclude FDCPA claims based on attempts to collect post-discharged debts at the pleadings stage.[1] The Court finds these cases persuasive. "[T]here is no reason to believe that [the plaintiff] should be allowed only to recover under the Bankruptcy Code and not under the FDCPA" when "[t]he conduct at issue occurred after the discharge of [the plaintiff's] debt." *Gamble*, 846 F. Supp. 2d at 382. While Defendants point to a number of cases to support their argument of irreconcilable conflict between the Bankruptcy Code

---

[1] *E.g.*, *Gamble*, 846 F. Supp. 2d at 381–83; *Rios v. Bakalar & Assocs., P.A.*, 795 F. Supp. 2d 1368, 1369–70 (S.D. Fla. 2011); *Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 816–17 (S.D. Ohio 2008); *see Clark v. Brumbaugh & Quandahl, P.C., LLO*, 731 F. Supp. 2d 915, 921 (D. Neb. 2010) (refusing to dismiss FDCPA claim on summary judgment).

6

and the FDCPA, these cases have been limited by other decisions or are distinguishable.[2] Thus, at this stage in the litigation, the Court concludes that the Bankruptcy Code does not preclude Plaintiff from bringing her claim under the FDCPA.

    *2. The NCCAA*

The Court must next examine whether the Bankruptcy Code preempts Plaintiff's NCCAA claim. Defendants contend that Plaintiff's NCCAA claim is preempted "because it is premised and dependent upon a right created by the Bankruptcy Code, and it seeks a remedy exclusively provided for by the Bankruptcy Code." (ECF No. 38 at 4.) They further contend that to allow a private cause of action under North Carolina law for a violation of the bankruptcy discharge injunction would "usurp a function reserved by Congress for the Bankruptcy Courts." (*Id.*)

Preemption is grounded in the Supremacy Clause of the United States, which provides, *inter alia*, that "the Laws of the United States . . . shall be the supreme Law of the Land. U.S. Const. art. VI, § 2. "From this Supremacy clause flows the well-established principle that federal legislation, if enacted pursuant to the Congress' constitutionally delegated authority, can nullify conflicting state or local actions." *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301, 1304

---

[2] (ECF No. 34 at 7 (citing *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010), *Yaghobi v. Robinson*, 145 F. App'x 697 (2d Cir. 2005), *Necci v. Universal Fid. Corp.*, 297 B.R. 376 (Bankr. E.D.N.Y. 2003), *Mears v. LVNV Funding, LLC*, 541 B.R. 899 (Bankr. M.D. Fla 2015), *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), *In re Gaitor*, No. 13-80530, 2015 WL 4611183 (Bankr. M.D.N.C. 2015).) Cases are distinguishable as follows: *Simmons* and *Mears* addressed FDCPA claims in the pre-discharge context, *Simmons*, 622 F.3d at 95–96; *Mears*, 541 B.R. at 902, 905; *Simmons*, *Yaghobi*, and *Necci* were decided prior to the Second's Circuit's decision in *Garfield*. *Walls* described as "outlier," *Gamble*, 846 F. Supp. 2d at 382. *Gaitor* relies on *Walls, Simmons, and Necci,* which the Court finds unpersuasive. *See In re Gaitor*, 2015 WL 4611183, at \*3.

(4th Cir. 1992). The Fourth Circuit has identified two types of preemption, field preemption and conflict preemption, and has described the two as follows:

> Preemption may occur on two bases, the first of which turns on discovering the intent of Congress. Congress may expressly provide that federal law supplants state authority in a particular field or its intent to do so may be inferred from its regulating so pervasively in the field as not to leave sufficient vacancy within which any state can act. But even absent an express or implied congressional intent to preempt state authority in a field, state law is nevertheless preempted by operation of law to the extent that it actually conflicts with federal law.

*Id.* (citation omitted). "[C]ourts should not lightly infer preemption." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987). In this case, Defendants do not appear to argue that the Bankruptcy Code expressly preempts the NCCAA. The Court must therefore determine whether Congress intended the Bankruptcy Code's discharge provision to occupy the field for rights created under the Bankruptcy Code and, if not, whether the discharge provision conflicts with the NCCAA.

"When Congress legislates in a field traditionally occupied by the States, [the court] start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) (quotation omitted). Consumer protection laws such as the NCCAA fall historically into the state's broad police powers. *See Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144–146 (1963) (noting that regulation that is "designed to prevent the deception of consumers" falls within the state's police power); *In re Pryor*, 479 B.R. 694, 698 (Bankr. E.D.N.C. 2012) ("[Consumer protection] laws have historically fallen into the purview of the states' broad police powers, to which the courts have afforded special solemnity." (alteration in original and quotation omitted)). Accordingly,

courts have consistently held that "Congress did not . . . intend that the Bankruptcy Code be so pervasive that it occupy the field of debtor/creditor relations." *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 93 (Bankr. E.D. Va. 1995); *cf. In re Tate*, 253 B.R. 653, 670 (Bankr. W.D.N.C. 2000) ("It would be too broad to say that [the North Carolina Fair Debt Collection Practices Act and Unfair and Deceptive Trade Practices Act] are entirely preempted from the field of bankruptcy."). Thus, in order for this Court to conclude that Plaintiff's NCCAA claim is preempted, the Court must find that it conflicts with a specific Bankruptcy provision, *i.e.*, § 524(a) here. *See In re Tate*, 253 B.R. at 670; *In re P.K.R.*, 189 B.R. at 93.

To determine whether a state law is conflict preempted by federal law, the Fourth Circuit has stated that courts should resolve whether it is impossible to comply with both the state and federal law or whether the state law presents an obstacle to the accomplishment of the purposes of the federal law. *Worm*, 970 F.2d at 1305. In this case, the Court concludes that Plaintiff's allegations in her Complaint do not reveal an actual conflict between the NCCAA and the Bankruptcy's injunction provision. Plaintiff is not seeking to hold Defendants in contempt for violating the Bankruptcy discharge order. Rather, Plaintiff's Complaint seeks to establish liability under the NCCAA based on Defendants' allegedly attempting to collect a debt that was no longer subject to collection. The mere fact that the debt was extinguished by virtue of a bankruptcy does not make compliance with the Bankruptcy's injunction provision and the NCCAA impossible. *See Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 609 (E.D. Pa. 2006) ("[M]erely because a Plaintiff brings a state law claim in the context of a bankruptcy matter does not justify preemption of those claims . . . ."); *accord In re Waggett*, NO: 09-4152-8-SWH, 2015 WL 1384087, at *8 (Bankr.

9

E.D.N.C. Mar. 23, 2015) (stating that "defendants through their actions and collection methods have exposed themselves to liability under the Bankruptcy Code and North Carolina law" and "there is no risk of conflict between the enforcement of the state laws and the Bankruptcy Code"). Nor will Plaintiff's NCCAA claim disrupt uniform application of the bankruptcy laws or contravene congressional purpose. The bankruptcy proceedings have terminated, and Plaintiff's NCCAA claim is based on conduct that occurred following termination of the proceedings. *See Dougherty*, 425 F. Supp. 2d at 609.

Because there is no risk of actual conflict with the Bankruptcy Code's injunction provision, Plaintiff's NCCAA claim is not preempted. Thus, the Court denies Defendants' motion to dismiss Plaintiff's NCCAA claim on the ground that the claim is preempted by the Bankruptcy Code.

### B. Whether Plaintiff has Standing

Defendant next argues that Plaintiff has not suffered an injury-in-fact, and therefore the Court must dismiss this action for lack of Article III standing. (ECF No. 34 at 9.) To establish standing at the motion to dismiss stage, a plaintiff must plausibly allege: (1) an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct by the defendant; and (3) the injury is capable of being redressed by a favorable decision. *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 89 (4th Cir. 2013). In class actions, such as this case, the court must "analyze standing based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017), *petition for cert. filed*, 85 U.S.L.W 3530 (U.S. Apr. 27, 2017) (No. 16-1328). Defendants challenge only the injury-in-fact element of Article III standing—that

Plaintiff has failed to allege sufficient facts "demonstrating a concrete and particularized actual injury caused by the Defendants' alleged conduct." (ECF No. 34 at 11.) The Court therefore focuses on this element.

For an injury to be "concrete," "it must actually exist" and to be "particularized," "it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1548 (2016) (quotation omitted). The Supreme Court recently examined the "concreteness" requirement of the injury-in-fact element of standing. According to the Court, an injury need not be tangible in order to be "concrete," as intangible injuries can be concrete. *Id.* at 1549. To determine whether an intangible harm constitutes an injury-in-fact, the Supreme Court instructed courts "to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* In addition, Congress "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (alteration and quotation omitted). However, the Court admonished that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* As a result, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Since *Spokeo* was decided, the majority of courts have held that FDCPA violations, like the ones asserted in this case, are substantive violations and thus produce "concrete injuries" sufficient to satisfy Article III's requirement of injury-in-fact. *See, e.g., Biber v. Pioneer Credit*

*Recovery, Inc.*, --- F. Supp. 3d ----, 2017 WL 118037, at *3 & n.5 (E.D. Va. Jan. 11, 2017) (listing cases and explaining that "§ 1692e provides certain debtors a right to be free from false, deceptive, or misleading conduct or representations by debt collectors" and "[t]hus . . . violations of § 1692e differ significantly from the innocuous, bare 'procedural violations' described by the Supreme Court in *Spokeo*"); *Pisarz v. GC Servs., Ltd. P'ship*, No. 16-4552(FLW), 2017 WL 1102636, at *5 (D.N.J. March 24, 2017); *Bautz v. ARS Nat'l Servs., Inc.*, --- F. Supp. 3d ----, 2016 WL 7422301, at *9–10, 12–13 (E.D.N.Y. Dec. 23, 2016); *Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1237 (D. Colo. 2016).

In this case, Plaintiff alleges in her Complaint that Defendants violated the FDCPA and NCCAA by deceptively representing that she owed a debt and payment was due on the debt, though it had been discharged in bankruptcy. (*See* ECF No. 26 ¶¶ 57, 63.) She alleges that Defendants represented that the "unpaid debt" was "affecting her credit." (*Id.* ¶ 30.) According to Plaintiff, she has "experienced emotional distress resulting from the stress, anxiety, fear, anger, and frustration" because of the actions of Defendants. (*Id.* ¶ 35.) At this stage in the litigation, these allegations are sufficiently particularized and concrete to satisfy the injury-in-fact requirement of standing. Defendants' motion to dismiss for lack of standing must be denied.

### III. DISMISSAL FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

Having concluded that the Court has subject matter jurisdiction, the Court must examine Defendants' remaining arguments for dismissal under Rule 12(b)(6). The purpose of a motion made under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a plaintiff need only plead a short and plain statement of the claim establishing that he or she is entitled to relief, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555. A claim is plausible when the complaint alleges sufficient facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A. Plaintiff has stated a claim under the FDCPA

To state a claim for violations of the FDCPA, Plaintiff must show that (1) she has been "the object of collection activity arising from a consumer debt;" (2) Defendants qualify as debt collectors; and (3) Defendants have "engaged in an act or omission prohibited by the FDCPA." *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). There is no dispute as to the first factor—that Plaintiff was the object of collection activity arising from a consumer debt. The Court therefore considers the remaining factors.

  1. *Whether Defendants Qualify as Debt Collectors*

Defendant FirstPoint, Inc. contends that it is not a debt collector as defined by the FDCPA. (ECF No. 34 at 11.) Specifically, FirstPoint, Inc. argues that "[a]t no time relevant to this case has [it] sought to collect debts, it does not employ individuals who engage in the practice of collecting debts, and it does not hold a license with the North Carolina Department of Insurance to collect debts." (*Id.* at 12.) According to FirstPoint, Inc., Plaintiff "fails to

proffer facts contradicting these truths." (*Id.*) Further, FirstPoint, Inc. contends that it cannot be held vicariously liable for Defendant FirstPoint Collection Resources, Inc.'s actions in this case. (*Id.* at 14.)

"The FDCPA 'generally appl[ies] only to debt collectors,'" *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011) (alteration in original) (quoting *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003)), which the statute defines as one whose principal business purpose "is the collection of any debts, or who regularly collects or attempts to collect" debts owed to another. 15 U.S.C. § 1692a(6). While liability under the FDCPA may be imposed on a company based on "general principles of agency," *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006), several circuits have held that vicarious liability "may only be imposed if both the principal and the agent are debt collector[s] as defined by the FDCPA," *Breidenbach v. Experian*, No. 3:12-cv-1548-GPC-BLM, 2013 WL 1010565, at *3 (S.D. Cal. March 13, 2013).[3] Though the Fourth Circuit has not addressed this issue, several district courts have also held that a company must be a "debt collector" to be vicariously liable under the FDCPA.[4]

Here, Plaintiff has sufficiently alleged that FirstPoint, Inc. is a "debt collector" under the FDCPA. While Plaintiff's conclusory allegation that "FirstPoint, Inc. is regularly engaged

---

[3] *See, e.g.*, *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *see also Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1059 (7th Cir. 2000).

[4] *See, e.g.*, *McWilliams v. Advanced Recovery Sys., Inc.*, 174 F. Supp. 3d 936, 942 (S.D. Miss. 2016); *Richardson v. Rosenberg & Assocs. LLC*, No. WDQ–13–0822, 2014 WL 823655, at *5 (D. Md. Feb. 27, 2014); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006); *but see Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1090 (E.D. Cal. 2013).

in the collection of debts" alone may be insufficient to demonstrate that FirstPoint, Inc. is a "debt collector," when this allegation is combined with Plaintiff's allegations that *Defendants* contacted her to collect on the debt, (ECF No. 26 ¶¶ 8, 21, 28), the Court can draw the reasonable inference that FirstPoint, Inc. is a "debt collector" as defined by the FDCPA.[5]

FirstPoint, Inc. nevertheless, urges the Court to take judicial notice of its Exhibit 1, which it offers as evidence that FirstPoint, Inc. does not hold a license with the North Carolina Department of Insurance to collect debts. (*See* ECF No. 34 at 12; ECF No. 34-1.) The FDCPA, however, does not contain such a requirement, and Defendants have cited to no authority for the proposition that a license is required to be a debt collector under the FDCPA. Thus, the Court concludes that Plaintiffs have plausibly alleged that FirstPoint, Inc. qualifies as a debt collector under the FDCPA.

*2. Whether Defendants have engaged in prohibited acts under the FDCPA*

Defendants next contend that Plaintiffs claim is "devoid of any concrete facts demonstrating that the Defendants engaged in forbidden conduct under the law." (ECF No. 34 at 14.) They go on to argue that "[s]imply because the Plaintiff received a phone call regarding her debt after its discharge is insufficient to give rise to a claim under the FDCPA." (*Id.* at 15.) The Court disagrees.

Plaintiff's Complaint alleges that, despite receiving a discharge on a debt by a bankruptcy court, Defendants contacted her by phone and represented that she had an unpaid

---

[5] Because Plaintiff has sufficiently alleged that FirstPoint, Inc. is a "debt collector," the Court need not determine whether a defendant must satisfy the statutory definition of a "debt collector" to be vicariously liable under the FDCPA.

15

debt that was due and in collections and that her credit was being affected. (*See* ECF No. 26 ¶¶ 28–30.) The Complaint further alleges that Defendants had no right to attempt collection on a discharged debt. (*See id.* ¶¶ 31, 57.) These allegations, taken as true, are sufficient to support her claim that Defendants falsely represented that Plaintiff owed a debt in violation of 15 U.S.C. § 1692e. *See Randolph*, 368 F.3d at 728 (demanding immediate payment of a debt after the debt's discharge is "'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction (11 U.S.C. § 524), it is not").

### B. Plaintiff has stated a claim under the NCCAA

Like their arguments for dismissal of Plaintiff's FDCPA claim, Defendants argue that FirstPoint, Inc. is not a "collection agency" as defined under N.C. Gen. Stat. § 58-70-15(a). (ECF No. 34 at 11.) They further contend that Plaintiff has failed to allege sufficient facts to state a claim under the NCCAA. (*Id.* at 15.) Again, the Court disagrees with both arguments.

The NCCAA defines a "collection agency" as "a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims." N.C. Gen. Stat. § 58-70-15(a). Unlike the FDCPA, the NCCAA does require a permit to operate as a collection agency in North Carolina, N.C. Gen. Stat. § 58-70-1, and FirstPoint, Inc. claims that it lacks such a permit and thus cannot be a "collection agency" under the law, (ECF No. 34 at 11–12). The NCCAA, however, does not define "collection agency" based on whether a company has a permit or not; it simply requires that the collection agency have a permit to do business in North Carolina. Thus, it is plausible that FirstPoint, Inc. fits the definition of a "collection agency"

under the NCCAA though it may be operating in violation of the Act by not having a permit. The Court, therefore, concludes that Plaintiff's Complaint contains plausible allegations to allow the Court to draw the reasonable inference that FirstPoint, Inc. is a collection agency under the NCCAA. (*See* ECF No. 26 ¶¶ 12, 21, 28.)

Further, Plaintiff's Complaint sufficiently alleges that Defendants falsely represented the character, extent, or amount of a debt in violation of N.C. Gen. Stat. § 58-70-110(4), (ECF No. 26 ¶¶ 28–33, 63). *See* N.C. Gen. Stat. § 58-70-110(4) ("No collection agency shall . . . [f]alsely represent[] the character, extent, or amount of a debt against a consumer."). Thus, Defendants' motion to dismiss the NCCAA claim must be denied.

### C. Whether Plaintiff's Injunctive Relief Claim should be dismissed

Finally, Defendants move to dismiss Plaintiff's third claim for temporary and permanent injunctive relief. Defendants argue that injunctive relief is not an available remedy under the FDCPA and the NCCAA.[6] (ECF No. 34 at 16–18.)

The Fourth Circuit has not addressed whether the FDCPA permits private parties to seek injunctive relief. *See also Vitullo v. Mancini*, 684 F. Supp. 2d 760, 762 (E.D. Va. 2010). According to the Second Circuit, "every federal appeals court to have considered the question has held that it does not." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 n.1 (2d Cir. 2012); *see, e.g., Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, --- U.S. ----, 136 S. Ct. 663 (2016); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (noting that private actions under the FDCPA are

---

[6] Plaintiff has filed no motion for temporary injunctive relief. In her briefing, Plaintiff states that she does not intend to pursue temporary injunctive relief. (ECF No. 36 at 19.)

for money damages); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *see also Vitullo*, 684 F. Supp. 2d at 763–65.

Whether the FDCPA permits injunctive relief is a question that the Court need not decide at the motion to dismiss stage. *See Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109 F. Supp. 3d 251, 268 (D.D.C. 2015) (concluding that the court need not decide the issue of availability of injunctive relief under the FDCPA at the motion to dismiss stage and that this issue can wait for another day). However, the Court does find that dismissal of Plaintiff's claim of injunctive relief is warranted because a request for injunctive relief is not a cause of action but rather a type of remedy. *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) ("[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged…."). Thus, Plaintiff's claim of injunctive relief will be dismissed to the extent it is pleaded as an independent cause of action rather than a remedy.

## IV. CONCLUSION

At this stage in the litigation, Plaintiff's FDCPA and NCCAA claims are not precluded by the Bankruptcy Code and thus survive dismissal. Plaintiff has also alleged plausible allegations of standing to bring this action. While the Complaint states plausible FDCPA and NCCAA claims, the claim of injunctive relief must be dismissed because it is pleaded as an independent cause of action, rather than a remedy. This does not preclude Plaintiff from requesting injunctive relief in her Prayer for Relief as she has done. The Court has decided it need not resolve at this stage in the litigation whether injunctive relief is precluded by the FDCPA and the NCCAA.

18

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (ECF No. 33) is GRANTED IN PART and DENIED IN PART. The Court denies Defendants' motion to the extent it seeks dismissal of Plaintiff's FDCPA and NCCAA claims, and grants the motion to the extent it seeks dismissal of the claim for temporary and permanent injunctive relief.

This, the 17th day of May, 2017.

    /s/ Loretta C. Biggs
United States District Judge